UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:08-cv-584-RJC

| | |
|---|---|
| RONNIE O. EDWARDS, ) | |
| ) | |
| Petitioner, ) | |
| ) | **ORDER** |
| v. ) | |
| ) | |
| HERBERT JACKSON, Admin., ) | |
| Brown Creek Corr. Inst., ) | |
| ) | |
| Respondent. ) | |
| ) | |

**THIS MATTER** comes before the Court on Respondent's motion for summary judgment. (Doc. No. 5).

## I. BACKGROUND

Petitioner is a state court prisoner who, on May 4, 2004, in Mecklenburg County Superior Court, the Honorable J. Gentry Caudill presiding, was convicted after trial by jury of attempted common law robbery and habitual felon status and was sentenced to 130-65 months imprisonment, in cases 02 CRS 216576 and 78775. Petitioner did not file a timely notice of appeal, but on December 5, 2005, the North Carolina Court of Appeals allowed his petition for writ of certiorari in order to provide a belated appellate review. On July 3, 2007, the North Carolina Court of Appeals issued an unpublished opinion finding no error, and on August 23, 2007, the North Carolina Supreme Court denied discretionary review.

The North Carolina Court of Appeals summarized the facts from Petitioner's trial as follows:

> At trial, the State's evidence tended to show that on 15 April 2002, Sonya
> Ransome was loading groceries into the rear of her vehicle parked outside a Food
> Lion grocery store located on West Sugar Creek Road in Charlotte when a red
> pickup truck stopped behind her. A man exited the driver's side of the truck, told

Ms. Ransome, "You got to give me this[,]" and grabbed Ms. Ransome's purse. Ms. Ransome resisted, and the two struggled for one to two minutes over possession of the purse until the purse strap either broke or detached from the purse. Thereafter, the man retreated to his truck without the purse and drove away.

Ms. Ransome called 911 and reported the incident to a dispatcher. She described the truck and provided the dispatcher with the truck's license plate number, as obtained by a witness to the incident.

Officer Leo Savitch of the Charlotte–Mecklenburg Police Department responded to the call. Upon arriving at the scene, he met Ms. Ransome, who was visibly upset and crying. Ms. Ransome related what had happened and provided a description of her assailant and his vehicle. Ms. Ransome also told Officer Savitch she observed a female lying in the back seat of the truck. Officer Savitch interviewed other witnesses at the scene, and based on the information he gathered, he reported over the radio "a full-sized Ford F150, red in color, North Carolina tag ... traveling west on West Sugar Creek toward W.T. Harris ... being driven by a black male[ ]" with a black female passenger lying down on the seat.

Mecklenburg County ABC Board Officer T.L. Ashby was pulling into a gas station when he received a broadcast of an all points bulletin ("APB") from the Mecklenburg County Center Dispatcher regarding the truck. The APB gave the license plate number and a description of the vehicle. Officer Ashby noticed a red pickup truck while at the gas station and he asked the dispatcher for a re-broadcast of the license plate number and vehicle description. Upon confirming that the license plate number and vehicle description matched the suspect vehicle, Officer Ashby pulled up to a gas pump to maintain visual contact with the vehicle, whereby he noticed a female lying down in the back seat. The truck left the gas station, and Officer Ashby followed the vehicle in his unmarked police car. When the driver of the truck failed to stop at a traffic light, Officer Ashby initiated a traffic stop. The driver parked and attempted to exit the vehicle hurriedly, but Officer Ashby ran to the truck with his gun drawn, and forced the driver back into the vehicle. At trial, Officer Ashby identified Defendant as the driver of the truck.

Meanwhile, Officer Savitch was still at the Food Lion with Ms. Ransome when he received information that a vehicle had been stopped which matched the description he had just given to dispatch. Officer Savitch escorted Ms. Ransome to the location where the suspect vehicle had been stopped. There, Ms. Ransome positively identified the driver of the vehicle as the man who attempted to take her purse. At trial, Ms. Ransome again identified Defendant as her assailant. Defendant did not offer any evidence.

State v. Edwards, No. COA06-961, 2007 WL 1892498, at *1-2 (July 3, 2007).

Petitioner was represented at trial by Keith Stroud and on appeal by Keischa M. Lovelace. Petitioner dated a pro se motion for appropriate relief (MAR) April 3, 2008, and filed it in Mecklenburg County Superior Court. (Doc. No. 6, Ex. 7). On September 3, 2008, the Honorable Robert P. Johnston summarily denied the MAR, stating that all claims that were not procedurally defaulted were denied on the merits. (Doc. No. 6, Ex. 8). On September 26, 2008, Petitioner filed a pro se certiorari petition with the North Carolina Court of Appeals. (Doc. No. 6, Ex. 9). The North Carolina Court of Appeals denied the certiorari petition on October 3, 2008. (Doc. No. 6, Ex. 11). Petitioner dated his pro se federal habeas application form December 2, 2008 and filed it in this Court on December 14, 2008.

Petitioner contends that (1) his conviction was obtained by the use of evidence gained in an unconstitutional search and seizure; (2) his conviction was obtained by the use of evidence gained pursuant to an unlawful arrest; (3) his conviction was obtained due to ineffective assistance of trial counsel; and (4) his conviction was sustained due to ineffective assistance of appellate counsel.

## II.     STANDARD OF REVIEW

A. Summary Judgment Standard

Summary judgment is appropriate in those cases where there is no genuine dispute as to any material fact, and it appears that the moving party is entitled to judgment as a matter of law. FED. CIV. P. 56(c)(2); United States v. Lee, 943 F.2d 366, 368 (4th Cir. 1991). Any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587–88 (1986). Where, however, the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate.

3

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248–49 (1986).

B. Section 2254 Standard

In addition to the motion for summary judgment standard set forth above, this Court must also consider the Petition for Writ of Habeas Corpus under the requirements set forth in 28 U.S.C. § 2254. Section 2254(d) provides that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim:
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); see also Tice v. Johnson, 647 F.3d 87, 103 (4th Cir. 2011).

A claim is considered "adjudicated on the merits" when it is "substantively reviewed and finally determined as evidenced by the state court's issuance of a formal judgment or decree." Young v. Catoe, 205 F.3d 750, 755 (4th Cir. 2000) (quoting Thomas v. Davis, 192 F.3d 445, 455 (4th Cir. 1999)). A state court adjudication is "contrary to" clearly established federal law only if "the state court arrives at a conclusion opposite to that reached by [the United States Supreme] Court on a question of law or if the state court decides a case differently than [the United States Supreme] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412–13 (2000). "It is not enough for us to say that, confronted with the same facts, we would have applied the law differently; we can accord [the petitioner] a remedy only by concluding that the state court's application of the law in his case was objectively unreasonable." See Tice, 647 F.3d at 103 (citing Williams v. Ozmint, 494 F.3d 478, 483–84 (4th Cir. 2007)).

"[W]e will not discern an unreasonable application of federal law unless 'the state court's decision lies well outside the boundaries of permissible differences of opinion.'" Id. at 108 (quoting Goodman v. Bertrand, 467 F.3d 1022, 1028 (7th Cir. 2006)).

In contrast, "[a] federal habeas court will not review a claim rejected by a state court if the decision of [the state] court rests on a state law ground that is independent of the federal question and adequate to support the judgment." Walker v. Martin, 131 S.Ct. 1120, 1127 (2011) (internal quotations and citations omitted). "The state-law ground may be a substantive rule dispositive of the case, or a procedural barrier to adjudication of the claim on the merits." Id. (citation omitted). A procedural default also occurs "when a habeas petitioner fails to exhaust available state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred." Hyman v. Keller, No. 10–6652, 2011 WL 3489092, at *9 (4th Cir. July 21, 2011) (quoting Breard v. Pruett, 134 F.3d 615, 619 (4th Cir. 1998)); see also 28 U.S.C. § 2254(b)(1)(A).

Section 2254's exhaustion requirement demands that a petitioner give "the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." Larry v. Branker, 552 F.3d 356, 366 (4th Cir. 2009) (quoting O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999)). This includes filing petitions for discretionary review when that review is part of the ordinary appellate procedure in the state. See id. In North Carolina, a petitioner may satisfy § 2254's exhaustion requirement by directly appealing his conviction to the North Carolina Court of Appeals and then petitioning the North Carolina Supreme Court for discretionary review, or by filing a state post-conviction proceeding in the trial court division and then petitioning the North Carolina Court of Appeals for a writ of

5

certiorari.  See N.C. GEN. STAT. §§ 7A–31, 15A–1422.

However, a petitioner may overcome a finding of procedural default by showing cause and prejudice arising from the asserted constitutional error.  McCarver v. Lee, 221 F.3d 583, 591–92 (4th Cir. 2000).  To show "cause," a petitioner may make "a showing that the factual or legal basis for the claim was not reasonably available to counsel."  Id. at 591 (quoting McCleskey v. Zant, 499 U.S. 467, 494 (1991)).  To establish "prejudice," a petitioner must show "not merely that the errors at his trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions."  Id. at 592 (quoting United States v. Frady, 456 U.S. 152, 170 (1982)).

A habeas petitioner may also overcome his procedural default by demonstrating that the court's failure to consider the claim will result in a fundamental miscarriage of justice.  Hedrick v. True, 443 F.3d 342, 359 (4th Cir. 2006) (citing Coleman v. Thompson, 501 U.S. 722, 750 (1991)).  The "fundamental miscarriage of justice" exception applies only to a narrow class of cases involving extraordinary instances "where a constitutional violation has 'probably resulted' in the conviction of one who is 'actually innocent' of the substantive offense."  Dretke v. Haley, 541 U.S. 386, 392–94 (2004) (citing Murray v. Carrier, 477 U.S. 478, 494–96 (1986)).

### III.  ANALYSIS

#### A.  Petitioner's Fourth Amendment Claims (Contentions 1 and 2)

In his first and second contentions, Petitioner contends that his conviction was obtained by the use of evidence gained in an unconstitutional search and seizure and an unlawful arrest. Both contentions arise out of Petitioner's assertion that the police exceeded the bounds of a

Terry stop and that the police seized private property from the vehicle Petitioner was driving without a search warrant and without Petitioner's permission. See Terry v. Ohio, 392 U.S. 1 (1968). Petitioner further contends that the arrest resulted after Petitioner was wrongly accused of possessing a stolen vehicle, and that evidence regarding possessing a stolen vehicle and evidence of allegedly possessing a knife was used against Petitioner at trial. Both Contention 1 and Contention 2 are without merit.

First, Petitioner was afforded a full and fair opportunity to raise any Fourth Amendment search and seizure or unlawful arrest claims he wished to raise at trial and on appeal, but he did not do so. Therefore, his current Fourth Amendment search and seizure claim and unlawful arrest claims are both barred from federal habeas review. See Stone v. Powell, 428 U.S. 465, 482 (1976) (stating that federal habeas review is not available for Fourth Amendment claims where the petitioner was afforded an opportunity for full and fair litigation of the claims in the state court).

Petitioner did raise the substance of his Fourth Amendment claims in his MAR. (Doc. No. 6, Ex.7). The MAR court summarily denied these claims, stating that the "identical issues could have been raised on appeal or were resolved against him by the North Carolina Court of Appeals in a decision rendered on July 7, 2007."[1] (Doc. No. 6, Ex. 8). Petitioner's Fourth Amendment claims are, therefore, procedurally defaulted for the purpose of federal habeas review because the state MAR court expressly applied North Carolina's mandatory procedural bar statute in denying these claims. See N.C. GEN. STAT. § 15A-1419(a)(1), (a)(3) and (b); see

---

[1] On appeal to the North Carolina Court of Appeals, Petitioner raised only the following two assignments of error: (1) insufficiency of the evidence to convict Petitioner of common law robbery and (2) that the trial court committed error by failing to intervene when the prosecutor allegedly misstated the testimony of Officer Savitch. State v. Edwards, 2007 WL 1892498.

also Nickerson v. Lee, 971 F.2d 1125, 1127 (4th Cir. 1992) ("A federal court may not address the merits of a habeas petition when the state court's denial of a petition for collateral relief rested on [an] independent and adequate state law ground of procedural default."); Rose v. Lee, 252 F.3d 676, 683 (4th Cir. 2001) (concluding that North Carolina's Section 15A-1419 post-conviction procedural bar provision is now mandatory). Accord Lawrence v. Branker, 517 F.3d 700, 714 (4th Cir. 2008) (finding that an ineffective assistance of counsel claim was procedurally barred from federal habeas review where the state MAR court found that the petitioner was in an adequate position to have raised the claim on appeal but did not do so).[2]

### B.     Ineffective Assistance of Trial Counsel (Contention 3)

In his third contention, Petitioner contends that his conviction was obtained due to ineffective assistance of trial counsel. To support his ineffective assistance of trial counsel claim, Petitioner asserts that his trial counsel refused to prepare for trial by not investigating the case and interviewing all potential witnesses, and that trial counsel offered at court to read a witness's statement to the jury that was hostile to the defense. These assertions do not warrant federal habeas relief. First, Petitioner's ineffective assistance of trial counsel claim is procedurally barred. That is, Petitioner did not raise this claim on appeal even though he was in an adequate position to have done so, and in its summary denial the MAR court stated that all claims that were not properly raised on appeal were procedurally defaulted. In any event, Petitioner's ineffective assistance of trial counsel claim is without merit. Under clearly

---

[2] Petitioner does not appear to be arguing ineffective assistance of counsel based on the failure to raise Petitioner's Fourth Amendment claims. Even if he had, there is no merit to any potential claim of ineffective assistance of trial or appellate counsel for failing to raise Petitioner's Fourth Amendment search and seizure or unlawful arrest.

8

established Supreme Court law as set forth in *Strickland v. Washington*, to prove ineffective assistance of counsel, a petitioner must show that his counsel's performance was deficient and that, absent counsel's error, there is a reasonable probability that the outcome would have been different. 466 U.S. 668 (1984). Performance is deficient if it falls below an objective standard of reasonableness, which is defined in terms of prevailing professional norms. *Id.* at 688. Petitioner has simply failed to show either deficient performance by counsel or prejudice as required by Strickland.

As to Petitioner's contention regarding counsel's failure to investigate the case and interview all potential witnesses, Petitioner has failed to show how any specific witness testimony would have altered the outcome of the case. Furthermore, counsel's decision not to call certain witnesses was a matter of trial strategy which enjoys a strong presumption of effectiveness. Next, Petitioner's complaint that trial counsel offered a witness's statement into the record that was hostile to the defense, apparently refers to the statement of Donna Kendral who witnessed the attempted common law robbery. (Doc. No. 6, Ex. 6, at Tr. pp. 73-76). Trial counsel obviously introduced this statement because Kendral estimated the assailant's height and weight differently than the victim Sonya Ransome. Kendral reported that the assailant was six feet tall and weighed approximately 230 pounds. (Doc. No. 6, Ex. 6, at Tr. p. 75). Ransome testified he was 5'8" and weighed approximately 160 pounds. (Doc. No. 6, Ex. 6, at Tr. pp. 39-43). Then, in closing argument trial counsel emphasized theses differences in descriptions as grounds for showing that the state failed to meet its burden of proof. (Doc. No. 6, Ex. 6, at Tr. p. 87). Counsel's decision to use Kendral's testimony was a reasonable strategic decision that constituted neither deficient performance nor prejudice under Strickland. Therefore, even if this claim were not procedurally barred, it would fail on the merits. In sum, Petitioner's ineffective

assistance of trial counsel claim is procedurally barred, conclusory, and without merit.

## C. Ineffective Assistance of Appellate Counsel (Contention 4)

In support of his fourth contention, Petitioner contends that his conviction was sustained due to ineffective assistance of appellate counsel. To support this contention, Petitioner asserts that his appellate counsel was ineffective for failing to assert a claim for ineffective assistance of trial counsel and that appellate counsel was also ineffective for failing to investigate and interview witnesses as to facts in dispute. For the following reasons, these assertions do not warrant federal habeas relief.

As with claims for ineffective assistance of trial counsel, claims of ineffective assistance of appellate counsel are properly analyzed under the familiar two-prong test of Strickland. Smith v. Murray, 477 U.S. 527, 535-36 (1986) (applying Strickland to claim of attorney error on appeal). Thus, Petitioner must demonstrate that counsel's performance was deficient and that, but for counsel's deficient performance, there was a reasonable probability that the result on appeal would have been different. Strickland, 466 U.S. at 686.

> Counsel is not obligated to assert all nonfrivolous issues on appeal, as there can hardly be any question about the importance of having the appellate advocate examine the record with a view to selecting the most promising issues for review. Indeed, winnowing out weaker arguments on appeal and focusing on those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy.

Bell v. Jarvis, 236 F.3d 149, 164 (4th Cir. 2000) (en banc).

Petitioner raised the claim for ineffective assistance of appellate counsel in his MAR, and the MAR court summarily denied the claim. As explained above in response to Petitioner's third contention, trial counsel was not ineffective under the Strickland test. Therefore, on appeal, appellate counsel could not have been ineffective for failing to raise a meritless claim of

ineffective assistance of trial counsel. Furthermore, as for appellate counsel's failure to investigate Petitioner's case sufficiently and for the failure to investigate certain witnesses before filing Petitioner's appeal, Petitioner's allegations are conclusory, as he fails to show how any further investigation by appellate counsel would have altered the outcome of Petitioner's appeal. In sum, the MAR court's summary denial was neither contrary to or an unreasonable application of Strickland and its progeny.

## IV. CONCLUSION

For the reasons stated herein, Respondent is entitled to summary judgment as to all of Petitioner's claims.

**IT IS, THEREFORE, ORDERED** that:

1. Respondent's Motion for Summary Judgment, (Doc. No. 5), is **GRANTED**;

2. It is further ordered that pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, this Court declines to issue a certificate of appealability. See 28 U.S.C. § 2253(c)(2); Miller–El v. Cockrell, 537 U.S. 322, 338 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 473, 484 (2000) (when relief is denied on procedural grounds, a petitioner must establish both that the dispositive procedural ruling is debatable and that the petition states a debatable claim of the denial of a constitutional right).

Signed: January 18, 2012

Robert J. Conrad, Jr.
Chief United States District Judge